John N. **MAYNARD**, Appellant
(Defendant below)

v.

**STATE** of Indiana, Appellee
(Plaintiff below)

No. 41S00–8601–CR–89.

Supreme Court of Indiana.

Sept. 30, 1987.

G. Michael Loveall, Jones Loveall Johnson & Bailey, Franklin, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, John N. Maynard, was convicted by a Johnson County jury of two counts of child molesting, class B felonies. The trial court ordered him to serve consecutive sentences of eighteen (18) years and twelve (12) years. In this direct appeal, Appellant raises the following issues for our review:

1. sufficiency of the evidence supporting each conviction;

2. error in finding the child witnesses competent to testify;

3. error in excluding testimony concerning a prior incident of molestation;

4. prosecutorial misconduct;

5. error in sustaining the State's objection to certain impeachment testimony;

6. error in admitting evidence of other uncharged acts of molestation committed by Appellant;

7. whether the alleged errors taken together amount to reversible error, and;

8. error in sentencing.

Appellant was charged with two counts of performing or submitting to deviate sexual conduct with a child under the age of twelve (12) years. At the time these crimes were committed, Appellant lived with his wife, Jan Maynard, her two sons, D.V., and G.V., and the couple's one year old son, John, Jr. D.V. was nine (9) years old and G.V. was eight (8) years old. The evidence at trial indicated Appellant forced both D.V. and G.V. to perform oral sex on him and he also performed oral sex on D.V.

I

Appellant challenges the sufficiency of the evidence supporting both convictions. When sufficiency of the evidence supporting a criminal conviction is challenged on appeal, we apply a narrow standard of review. We neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we look at the evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury could have reasonably inferred guilt beyond a reasonable doubt, the conviction will be affirmed. *Arthur v. State* (1986), Ind., 499 N.E.2d 746, 747; *McMurry v. State* (1984), Ind., 467 N.E.2d 1202, 1204.

The testimony presented at trial is summarized as follows. Appellant and Jan were married in August 1983. The couple had some difficulties but these seemed to subside upon the birth of the couple's first child. Appellant would care for the newborn baby during the day, and work during the afternoon and evening hours.

During the fall of 1984, D.V. and G.V. were in school and rode the bus home each night. Appellant was the only adult at home when the boys returned from school. In October, 1984, D.V.'s grades began to slip and he failed to turn in a science project on time. Jan learned that Appellant frequently kept one or both of the boys home on school days to take care of the baby while Appellant slept. In December, 1984, Jan took the children and moved out of the home. She stated Appellant was becoming increasingly more violent and was smoking marijuana in the presence of the children. The boys stayed with either their grandparents or their Aunt Catherine.

On January 5, 1985, G.V.'s Aunt Catherine scolded him for misbehaving. G.V. then told his grandmother, Thayis Vest, that he felt like everyone, including Appellant, liked his brother, D.V., more than they liked him. Thayis asked G.V. why he felt that way. G.V. responded that every night after school, Appellant called D.V. into the bedroom while he (G.V.) was told to sit on the couch.

Thayis was disturbed by this comment and asked Jan to talk to D.V. about the incidents. At first, D.V. said Appellant was making him smoke marijuana in the bedroom. Jan responded that she would have to go to the police and that D.V. might have to take a lie detector test to determine if he was telling the truth. Jan testified that D.V. looked scared, started crying, and said that Appellant also made him do other things in the bedroom.

D.V. then related that Appellant would take him into the bedroom and make him watch as Appellant masturbated. Several times, Appellant made D.V. fondle him. Appellant forced D.V. to perform oral sex on him and he performed oral sex on D.V. Appellant threatened D.V. with a "whip-pin" if he did not comply with Appellant's orders. D.V. stated he never told anyone because he was embarrassed. He knew what he was doing was wrong but felt it might cause his mother to divorce Appellant if he told her.

G.V. was asked if Appellant ever did those things to him. G.V. stated that one time Appellant asked him to perform oral sex on Appellant. G.V. refused and Appellant threatened him with a "whippin." G.V. then complied. G.V. stated he never told anyone about the incident because he was embarrassed.

Appellant presented testimony that the boys stayed with their grandmother during the summer of 1984. He stated he kept them home from school on only a few occasions. He explained D.V.'s absences from school were due to problems with D.V.'s tonsils. Appellant testified he left for work between 4:00 p.m. and 5:00 p.m., and that he had friends over when he was getting ready for work. This testimony was corroborated by Susan Richard, who stated she visited Appellant's home almost every day and was present when the children returned from school. She testified Appellant never took either child into a bedroom alone while she was there. Appellant also presented testimony that he filed for divorce one week prior to the time these accusations were made against him. Appellant's defense was that he did not have an opportunity to commit these acts.

Appellant argues that D.V. and G.V.'s testimony was riddled with inconsistencies and inaccuracies, making it questionable at best. Since their testimony was not corroborated by any other evidence, Appellant claims the testimony he gave is more worthy of belief.

It is the jury's function to judge the credibility of the witnesses. *Tyra v. State* (1987), Ind., 506 N.E.2d 1100, 1102; *Rodgers v. State* (1981), Ind., 422 N.E.2d 1211, 1213. The jury may believe whomever they choose. *Watkins v. State* (1986), Ind., 493 N.E.2d 446, 447; *Robinson v. State* (1985), Ind., 486 N.E.2d 986, 988. We will not disturb the jury's judgment unless the evidence clearly shows the verdict was so

incredible as to be beyond belief, or that there was no probative evidence from which the jury could have found the defendant guilty. *Hodge v. State* (1982), Ind., 442 N.E.2d 1006, 1009.

■ Here, the jury chose to believe the victims' testimony. We have held that the uncorroborated testimony of the victim is sufficient to sustain a criminal conviction for child molesting even though the victim is a minor. *Jones v. State* (1983), Ind., 445 N.E.2d 98, 100; *Smith v. State* (1982), Ind., 432 N.E.2d 1363, 1372. We find that, based on the testimony presented, the jury's verdict is supported by probative evidence. For us to hold otherwise would require us to reweigh the evidence, which we cannot do. *Tyra*, 506 N.E.2d at 1102. We therefore hold there was sufficient evidence presented from which the jury could reasonably conclude Appellant committed the crimes charged.

## II

Next, Appellant argues the trial court erred in finding G.V., age 8, and D.V., age 10, competent to testify.

The test used to determine whether a trial court erred in making a determination of competency was set forth in *Peters v. State* (1984), Ind., 470 N.E.2d 708 as follows:

> "Children less than ten years old may testify if 'it appears that they understand the nature and obligation of an oath.' Ind.Code § 34–1–14–5(2). The determination of a child's competency lies within the trial judge's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Lindsey v. State*, (1984) Ind., 465 N.E.2d 721; *Buttram v. State*, (1978) 269 Ind. 598, 382 N.E.2d 166, *reh. denied*. This Court has held that a child is competent to testify if the trial court finds the child knows the difference between telling the truth and telling a lie and knows that he or she will be punished for telling a lie. *Staton v. State*, (1981) Ind., 428 N.E.2d 1203. Accordingly, the trial court's decision will not be reversed unless it represents a manifest

abuse of discretion. *Lindsey, supra; Stewart v. State*, (1982) Ind., 442 N.E.2d 1026."

*Id.* at 710.

■ Here, the trial judge asked G.V. if he understood what an oath meant. G.V. responded that it meant to swear on the Bible or you would go to hell. The judge then explained that G.V. must tell the truth so that he would not get into trouble with the court. While this questioning was not extensive, it does indicate that G.V. knew the difference between the truth and a lie, and that telling a lie would result in punishment. The trial judge observed G.V.'s responses not only to his questions, but also to those asked by the attorneys. Appellant does not claim, nor is there any showing, that G.V.'s testimony was so unbelievable that it would indicate he was incompetent to testify. Rather, G.V.'s testimony was given in a very forthright and candid manner, given his age and maturity. Further, his testimony was consistent with the testimony of D.V. Given all this, we cannot say the trial court abused its discretion in allowing G.V. to testify. The weight to be given his testimony was, of course, for the jury to decide.

■ D.V. was ten (10) years old at the time he testified. Thus, he was presumed competent to testify. *Jethroe v. State* (1974), 262 Ind. 505, 509, 319 N.E.2d 133, 136; Ind.Code § 34–1–14–5 (Burns 1986). Nevertheless, the trial judge questioned him concerning what it meant to tell the truth, and what would happen if he did not do so. D.V. indicated he understood he had to tell the truth or he would be punished. Again, Appellant has failed to give us anything which would indicate D.V. was incompetent to testify. Appellant merely argues that the trial judge's questioning was not extensive enough.

We find the trial court asked both witnesses enough questions to ascertain that they knew the difference between telling the truth and telling a lie, and that they would be punished for telling a lie. There was no abuse of discretion in allowing either G.V. or D.V. to testify.

## III

On cross-examination, D.V. stated he did not report the incidents of molestation because he was embarrassed, and because he thought it might cause his mother to divorce Appellant. Appellant then sought to introduce evidence that D.V. was molested by a stranger while in kindergarten, and that D.V. reported this incident to his mother without hesitation. The trial court excluded this evidence pursuant to Indiana's Rape Shield Law.

On appeal, Appellant argues the trial court's ruling denied him an opportunity to impeach D.V.'s credibility. The State argues that the prior incident was so remote in both time and character, it was irrelevant. We agree with the State.

Evidence is relevant if, in light of general experience, it logically tends to prove or disprove a material issue of fact. *Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 505. The trial court is accorded wide latitude in ruling on the relevancy of any evidence. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460, *cert. denied,* — U.S. —, 106 S.Ct. 3311, 92 L.Ed.2d 723. This latitude is vested in the trial court to determine the probative value of the evidence compared to its prejudicial impact. *Id.* If the offered evidence is only marginally relevant, it is within the trial court's discretion to determine its admissibility. *Id.; Chittenden v. State* (1982), Ind., 436 N.E. 2d 86.

Here, the offered evidence had little probative value. D.V. stated he did not report Appellant's acts because he (D.V.) was embarrassed by it. Appellant sought to impeach D.V. by showing he was not embarrassed to report a prior sexual molestation committed by a stranger when D.V. was in kindergarten. D.V. was five years old at the time. We see a great difference in both the awareness and capacity for embarrassment D.V. may have had concerning these two separate incidents, given his age at the time each was committed. The prior incident occurred when D.V. was five years old. While he may have been scared by it, and knew it was wrong, it does not necessarily follow that he was

also embarrassed by it, given his young age. Also, the prior incident involved a stranger. Here, the acts were committed by Appellant, D.V.'s stepfather, who D.V. stated he loved and trusted. These instant crimes were committed in the privacy of the home under the threat of punishment. The fact that D.V. did not report these incidents as promptly as the prior incident is understandable given the difference in his age, and the different circumstances under which each incident transpired. Furthermore, one of the reasons D.V. gave for not reporting Appellant's deeds, was that he feared his brother, G.V., would tell other school children. This indicates to us a heightened level of maturity and awareness on D.V.'s part which he probably did not possess when the prior incident occurred. Thus, the offered evidence was only marginally relevant for impeachment purposes. Appellant has failed to demonstrate that the trial court abused its discretion in ruling the evidence inadmissible.

## IV

At the conclusion of Thayis Vest's direct testimony, the prosecutor said to defense counsel, "We heard the call a little late didn't we, counselor?" The comment appears to refer to Thayis' testimony concerning D.V.'s change of attitude toward Appellant. Thayis apparently blamed herself for not realizing there was a reason for this attitude change. Defense counsel asked the prosecutor what he had said and the prosecutor repeated the comment. Defense counsel then moved for a mistrial which the trial court denied. Appellant now claims this was error.

In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was, in fact, misconduct by the prosecutor, and then considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, 1057. The gravity of peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the

degree of impropriety of the conduct. *Hill v. State* (1986), Ind., 497 N.E.2d 1061, 1065. The granting of a mistrial lies within the sound discretion of the trial court, and its determination will be reversed only where an abuse of discretion can be established. *Id.*

■ While we agree the prosecutor's comment was uncalled-for and unnecessary, we do not believe it placed Appellant in a position of grave peril. After the comment was repeated by the prosecutor, the trial court reprimanded him before the jury, called the remark uncalled-for, and stated that such remarks would not be tolerated. Further, the record does not indicate any other instance of misconduct that would evidence a deliberate attempt to improperly prejudice Appellant. We find no abuse of the trial court's discretion in overruling Appellant's motion for a mistrial.

### V

During Appellant's case in chief, defense witness Susan Richards was questioned about certain conversations she had with the victim's mother, Jan. Appellant tried to show that after these crimes were charged, Jan expressed to Susan her disbelief in the victim's accusations. Appellant sought to impeach Jan's credibility with this evidence. The trial court ruled that a proper foundation had not been laid out for introducing evidence of a prior inconsistent statement.

■ When a witness is to be impeached, a proper foundation must first be laid. This is accomplished by bringing to the witness' attention the circumstances under which the contradictory statements were made. *Gradison v. State* (1973), 260 Ind. 688, 708, 300 N.E.2d 67, 81. This is so even when the impeachment testimony is offered by a third party. In *Anderson v. State* (1977), 267 Ind. 289, 370 N.E.2d 318, *cert. denied* (1978), 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786, the defendant tried to impeach a prosecution witness by calling two other witnesses who would testify that the prosecution witness made inconsistent statements to them. We held no foundation was laid in the cross-examination of the prosecution witness, and, therefore, the impeachment evidence was not admissible. *Id.* at 297, 370 N.E.2d at 322. Here, if Appellant wanted to impeach Jan by using a prior inconsistent statement made to a third party, he should have first brought her attention to the circumstances under which the inconsistent statement was made. This could have been done during Appellant's cross-examination of Jan. Since Appellant failed to lay the necessary foundation for introducing this impeachment testimony, the trial court did not err in ruling it inadmissible.

### VI

■ Next, Appellant contends it was error to allow D.V. to testify about other uncharged sexual misconduct committed by Appellant. We have held:

"The general rule in Indiana for the admission of evidence of separate, independent, and distinct crimes to establish guilt of an accused is that such evidence is inadmissible except where relevant to show intent, motive, purpose, identification, and common scheme or plan. [citation omitted]. However, this Court has carved an exception for those acts involving or showing a 'depraved sexual instinct.' [citation omitted]. The basis for this exception is that in prosecutions for depraved acts ' * * * the prosecuting witness is not likely to be believed, since the evidence' standing alone and entirely unconnected with anything which led to or brought it about, would appear * * * unnatural or improbable in itself.' [citations omitted]. Thus, the evidence lends credence to the testimony of the prosecution that might otherwise be disbelieved. [citation omitted]."

*Grey v. State* (1980), 273 Ind. 439, 445, 404 N.E.2d 1348, 1352. Here, the testimony that Appellant committed prior sexual acts against D.V. was admissible to show Appellant's depraved sexual instinct as well as to show a continuing plan on his part to exploit and sexually abuse D.V. There is no error here.

## VII

Finally, Appellant challenges the sentences he received. Specifically, he claims it was error to enhance the presumptive sentence for each crime of which he was convicted, and error to order the sentences to be served consecutively. Further, Appellant argues the trial court failed to consider the mitigating evidence he presented.

Sentencing is a decision within the trial court's discretion and will be reversed only upon a showing of manifest abuse of that discretion. *Warren v. State* (1984), Ind., 470 N.E.2d 342, 346. When the trial court uses its discretionary power to enhance a presumptive sentence, or impose consecutive terms, the record must disclose what factors were considered to justify such a sentence. *Id.* Here, the trial court found the following aggravating factors. These crimes were committed in private and involved the ability to deceive others. The crimes involved the building of trust, and then a continuing pattern of violating that trust. The court also considered the age of the victims and Appellant's use of threats of force to get the victims to comply with his demands. Based on this, we cannot say the trial court abused its discretion in aggravating each of Appellant's sentences and ordering them to be served consecutively. A court may, upon consideration of relevant facts and information, increase the presumptive sentence, impose consecutive sentences, or both. *Warren,* 470 N.E.2d at 345.

Appellant's last claim is that the trial court failed to consider his lack of a criminal record as a mitigating factor. The record indicates Appellant had been involved in auto theft and alcohol and substance abuse both as a juvenile and as an adult. We find no error in the sentencing here.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result with separate opinion.

DICKSON, Justice, concurring in result.

In its discussion of Issue V, the majority opinion views appellant's proffer of Jan's prior statements as an attempt to impeach her, and finds that the trial court properly prevented defendant from seeking to impeach Jan's credibility with evidence of her prior statements expressing disbelief in the victim's accusations.

Appellant's argument seems to present a different issue, however. During defendant's direct examination of Susan, she twice testified, without objection, that Jan admitted disbelief in the accusations. Thereafter, the court sustained the State's improper impeachment objection to the following question:

Q. Was there ever any explanation offered as to why these accusations were being made?

At trial, defense counsel stated that he was not seeking to present impeachment testimony. He contends that Jan's prior statements were admissible as substantive evidence under *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, and that because it was not offered for purposes of impeachment, the traditional impeachment foundation was not a prerequisite.

However, defendant failed to make an offer of proof. This precludes the trial court, and this Court on appeal, from determining the relevancy and admissibility of the proposed testimony, and the potential for harm resulting by its exclusion. Because of the absence of an offer of proof, the issue is not presented on appeal. *Strickland v. State* (1977), 265 Ind. 664, 359 N.E.2d 244.

In all other respects, I concur with the majority.